## CIRCUIT COURT OF FAIRFAX COUNTY

Clark

v.

Nationwide Mutual Fire Ins. Co.

April 14, 1999

Case No. (Law) 161702

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter came before me on April 2, 1999, on Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. Following oral argument, I took the matter under advisement. For the reasons stated below, Defendant's Motion for Summary Judgment is denied. Plaintiff's Cross-Motion for Summary Judgment is granted in part and denied in part.

The facts are undisputed in this case. Clark's residence was constructed in 1976 with an underground drain pipe, known as drain tiles, installed along the outside of the foundation footing. At some time before July 1996, the drain became clogged and drainage was restricted. The surface run-off from rain, which the drain tiles no longer drained away from the foundation, entered the foundation through the pervious foundation backfill. This sub-surface rain water caused sufficient pressure or remained for sufficient time to soak through the concrete block foundation.

Clark purchased a homeowner's insurance policy from Nationwide Mutual Insurance Company. But for the rider he purchased, Clark's policy would have contained the following exclusions from coverage:

> [W]ater damage. Loss resulting from water damage described below is not covered even if other perils contributed, directly or indirectly, to cause the loss.

Water damage means:

a. flood, surface water, waves, tidal water, overflow of a body of water, or spray from these, whether or not driven by wind.

b. water which backs up through sewers or drains, water from outside the dwelling's plumbing system which enters through sewers or drains, including water entering or overflowing a sump pump, sump pump well, or other system designed to remove subsurface water from the foundation area ... .

c. water below the surface of the ground, including water which exerts pressure on, seeks or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure.

Amendatory Endorsement, Fire 3479-95. (Defendant's Exhibit 3.)

Clark purchased a rider that deleted the exclusion contained in subparagraph b above.

Nationwide argues that coverage for the loss in this case is explicitly excluded by subsection c. Clark contends that the coverage for the damage is explicitly included by the purchased rider and is not excluded by the language in subsection c. Alternatively, he argues that the deletion of subsection b and the continued presence of subsection c as exclusions under the policy are ambiguous and therefore should be construed against the insurer. Both counsel agree that subsection a is not at issue in this case. I find that the policy is ambiguous about whether a loss such as the plaintiff's is covered. Construing that ambiguity against the insurer, plaintiff is entitled to summary judgment on the issue of coverage.

In Virginia, ambiguities in insurance contracts are construed most favorably toward the insured. *American Reliance Ins. Co. v. Mitchell,* 238 Va. 543, 547 (1989). "It is the universal rule of courts to construe language used in an insurance policy, to limit the liability of the company, strongly against the company." *Newsoms v. Commercial Cas. Ins.,* 147 Va. 471, 476 (1927).

It is a well settled rule in the construction of insurance policies of this character, which the insured accepts for the purpose of covering all accidents, to construe all language used to limit the liability of the company strongly against the company. Policies are drawn by legal advisers of the company, who study with care the decisions of the courts and with those in mind attempt to limit, as narrowly as possible, the scope of the insurance. It is only a fair rule which courts have

adopted to resolve any doubt or ambiguity in favor of the insured and against the insurer.

*Id.* (citing *Manufacturers' Accident Indemnity Co. v. Dorgan* (C.C.A.), 58 Fed. 945-956 (22 L.R.A. 620)).

I find that under one reasonable interpretation of the policy, the occurrence involved below-surface water seeping through foundation walls and hence would be excluded from coverage under subsection c. Under another reasonable interpretation, the occurrence involved water overflowing a system designed to remove subsurface water from the foundation area. This exclusion from coverage was deleted by the rider. See also *Broome v. Allstate Ins. Co.*, 241 S.E.2d 34 (Ga. App. 1977) (language like subsection c excludes only natural flooding as opposed to flooding caused by artificial means). "The general rule is that the burden is upon the insurer to prove that the loss is excluded by the terms of the policy." *White v. State Farm*, 208 Va. 394 (1967). When more than one interpretation is reasonable, an ambiguity exists and the contract must be construed most favorably toward the insured.

Defendant further contends that the following language found in the policy excludes coverage:

We cover direct physical loss to property described in Coverages A and B except that caused by:

5. Continuous or repeated seepage or leakage of water or steam over a period of time from within a plumbing, heating, or air conditioning system or from within a household appliance.

Section I - Perils Insured Against (Defendant's Exhibit 2).

I find this language is inapposite to the issue before me and does not exclude coverage for the occurrence.

Plaintiff's Cross-Motion for Summary Judgment is denied as to damages. The extent of damages suffered by the plaintiff that are covered under the policy is an issue of fact not decidable on summary judgment. That issue is reserved for proof at trial.