# CIRCUIT COURT OF THE CITY OF RICHMOND

Samuel Glass

. v.

Steve Mann,
Norma Sue Mayhew,
Daniel T. Schmitt,
and Karl B. Wagner, Jr.

November 5, 1999

Case No. (Law) ML6688

BY JUDGE JAMES B. WILKINSON

The matter before this Court arose over a dispute which occurred on September 26, 1996, at Regency Self Storage (Regency) in Henrico County, Virginia. The plaintiff, Samuel Glass, alleges that he was battered by defendant Steve Mann, a Henrico County police officer, and the battery occurred as a result of defendant Norma Sue Mayhew's repeated demands that he, Mr. Glass, be locked up. Mrs. Mayhew is the manager of Regency, and the plaintiff also holds defendants Karl B. Wagner, Jr., and Daniel T. Schmitt, owners of Regency, liable under the doctrine of respondent superior. Mr. Glass has also filed suit against Officer Mann alleging a civil rights violation pursuant to 42 U.S.C. § 1983.

On September 26, 1996, Mr. Glass was employed by Mr. James Grindstaff to assist in the removal of items which had been purchased from

Mr. Lawrence J. Helms. These items were being stored by Mr. Helms at Regency. That is one of the few facts not in dispute between the parties.

According to evidence presented by Mr. Glass, a dispute arose between Mr. Grindstaff and Mrs. Mayhew concerning her alleged purchase, for a third party, of the same items. Mrs. Mayhew eventually threatened to call the police, and Mr. Grindstaff told her to do so. According to Mrs. Mayhew, she confronted Mr. Grindstaff because his vehicle was obstructing other patrons' access to their storage lockers. She claims that Mr. Grindstaff ignored her requests, and she was forced to call the police. Mr. Helms, called by the plaintiff, testified that both Mr. Grindstaff and Mrs. Mayhew were being unreasonable.

When the police arrived, the plaintiff, Mr. Grindstaff, and a witness to the incident, Mr. Markus Stevens, testified Mrs. Mayhew began shouting "Lock them up" to Officer Mann. However, Mr. Helms and Officer Muncy, both plaintiff's witnesses, testified that they never heard Mrs. Mayhew shout at Officer Mann. Officer Mann testified that she never directed or requested him to arrest Mr. Glass, and Mrs. Mayhew denied shouting, "Lock them up." However, Officer Mann did testify that he instructed Mr. Grindstaff and Mr. Glass to leave Regency because Mrs. Mayhew wanted them off the property. Mr. Grindstaff admitted being told to leave by Officer Mann, but he also stated that Officer Muncy gave him permission to finish loading the purchased items.

According to Mr. Glass, he asked Officer Mann to move the police car because it was blocking his vehicle. At that point, Officer Mann grabbed him by the right arm, bent back his arm, and lifted him off the ground putting him in excruciating pain. Mr. Grindstaff did not see Officer Mann initiate contact, but, after hearing the scream, he saw Officer Mann kneeling behind Mr. Glass holding his arm. He further testified that the plaintiff's arm was red and swollen.

Officer Mann testified Mr. Glass was arrested for trespassing because he failed to leave the property after being asked to do so. He further stated that the police vehicle was not blocking Mr. Glass's car, and he never lifted Mr. Glass off the ground. Mr. Helms, a witness for the plaintiff, testified that he told an Internal Affairs investigator that he did not see Officer Mann take any inappropriate actions and Mr. Glass was given ample time to leave.

Later that same day, after being released from jail, Mr. Glass went to the St. Mary's Hospital Emergency Room complaining of pain in his right wrist and arm. Dr. Powell, the treating physician, testified there was no complaint of shoulder problems and there was no indication of a shoulder injury. On October 2, 1996, Mr. Glass telephoned his family practitioner to request a

referral to an orthopedic specialist. His family physician, Dr. Kowalski, testified that he was complaining of a right arm injury. Mr. Glass was seen the next day at West End Orthopedics where he indicated pain in his right hand and bursitis in his right elbow. Once again, he never mentioned any shoulder discomfort. His next visit to West End Orthopedics was on November 8, 1996, where he continued to complain of right elbow and arm pain, but he did not make any specific reference to a problem with his right shoulder.

Mr. Glass did not return to West End Orthopedics until June 23, 1997, almost nine months after the incident at Regency. During that visit, an X-ray of his right shoulder was taken revealing AC joint arthritis. Shortly thereafter, on July 10, 1997, an arthrogram was performed on Mr. Glass for the sole purpose of discovering whether there was a tear to his right rotator cuff. The results of that test showed no tear. In late December of 1997, Dr. Stern of West End Orthopedics diagnosed Mr. Glass with chronic posttraumatic impingement syndrome of the right shoulder. Finally, on June 1, 1998, Mr. Glass had surgery to repair a torn rotator cuff. At trial, Dr. James Carr, who performed an independent medical examination, testified that Mr. Glass had a pre-existing rotator cuff disease, distal clavicle arthritis and impingement, which was aggravated by his arrest. Dr. James testified that the plaintiff had a seven percent disability to the right shoulder as a result of the surgery. Finally, Mr. Glass testified that he had incurred medical expenses of $15,443 as a result of his injuries.

The parties came before this Court on July 6 and 7, 1999, for a trial on the issues before a jury. Upon hearing the evidence, representations, and arguments of counsel, the jury returned a verdict for the plaintiff against Officer Mann on the 42 U.S.C. 1983 claim in the amount of $38,750, and a verdict against all four defendants on the assault and battery claim in the amount of $116,250. The Court took the matter under advisement.

*Issue One: Whether the plaintiff introduced sufficient evidence for a jury to find that Norma Sue Mayhew aided, abetted, counseled, or encouraged Officer Mann by words, gestures, looks, or signs to cause a battery to Mr. Glass?*

*Issue Two: Whether the plaintiff provided sufficient evidence to find that the torn rotator cuff tear was proximately caused by Officer Mann's battery?*

*Discussion*

*I. Did Mrs. Mayhew encourage Office Mann to commit a battery upon Mr. Glass so as to make her and Mr. Wagner and Mr. Schmitt, as her employers, negligent and liable for any alleged injuries to Mr. Glass?*

The plaintiff alleges that Mrs. Mayhew, and her employers through the doctrine of respondeat superior, are joint tortfeasors with Officer Mann for the injuries which he claims. "Not only the principal actor or actual assailant, but also all others who aid, abet, counsel, or encourage the wrongdoer by words, gestures, looks, or signs, are equally liable with him to the injured party ... whether their motive was malicious or not." *Pike v. Eubank*, 197 Va. 692, 699 (1956), *citing* 6 C.J.S., *Assault and Battery*, § 27(a), p. 830. At trial, the only evidence which was introduced against Mrs. Mayhew in relation to the assault and battery allegation was that she shouted at the police several times to "lock them up." There were no allegations that Mrs. Mayhew exerted any type of physical force against Mr. Glass. Therefore, the issue before this Court is whether Mrs. Mayhew's verbal requests to the officer rose to a level making her a joint tortfeasor?

When the sufficiency of a plaintiff's evidence is challenged by a motion to set aside the verdict, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in the plaintiff's favor and should grant the motion only when it conclusively appears that the plaintiff has proved no cause of action against the defendant or where it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it. *Newton v. Veney and Raines*, 220 Va. 947, 951 (1980); *Reagan v. Reagan*, 215 Va. 222, 224, 207 S.E.2d 888, 890 (1974). *See also McGee v. Commonwealth*, 4 Va. App. 317, 321 (1987) (stating that a motion to set aside a verdict raises similar if not identical issues to a motion to strike). The plaintiff is relying solely on the testimony that Mrs. Mayhew encouraged Officer Mann to arrest Mr. Glass, and he cites *Pike v. Eubank*, 197 Va. 692 (1956), as justification for upholding the jury verdict against Mrs. Mayhew and her employers. In *Pike*, a police officer was held liable for injuries sustained by the plaintiff while he was in police custody. The victim in that case testified that he was held from behind by an officer who said "Hit the damn rascal again." *Pike*, 197 Va. at 695. After being called as an adverse witness, the police officer admitted that he had been holding the plaintiff from behind while he and other officers were trying to place him in a cell. *Id.* The Court held that a jury could reasonably have concluded that the

defendant intentionally held the plaintiff so that other officers could continue to batter him. *Id.* at 699.

While the *Pike* case and the matter before this Court both deal with allegations of excessive force used by the police to effect an arrest, there is very little similarity between the two cases. Mrs. Mayhew, according to the evidence presented by the plaintiff, only requested that Mr. Glass be locked up. The fact that this request was not done pleasantly or diplomatically is irrelevant. She never requested or encouraged Officer Mann to go beyond the scope of his authority to arrest the plaintiff. Furthermore, at the time of this incident, she was acting under a reasonable belief that Mr. Glass was trespassing on the property of Regency and she had the right to request his removal. Finally, Officer Mann testified that he arrested Mr. Glass after independently deciding there was a trespassing violation; furthermore, Officer Muncy, Officer Mann's partner, testified as a witness for the plaintiff that there was sufficient evidence to arrest Mr. Glass for trespassing.

Therefore, there was no evidence presented by the plaintiff which would allow a jury to find that Mrs. Mayhew aided, abetted, or encouraged Officer Mann in the alleged battery of the plaintiff. For that reason, the Court will strike all evidence regarding the assault and battery against Mr. Glass as it pertains to defendants Mayhew, Schmitt, and Wagner.

*II. Did the plaintiff provide sufficient evidence to find that the torn rotator cuff tear was proximately caused by Officer Mann's battery?*

At trial, the jury returned a verdict which imposed liability on Officer Mann for assault and battery and a violation of 42 U.S.C. § 1983, and defendant Mann made a timely motion to set aside the verdict. The Supreme Court, in *Graham v. Connor*, 490 U.S 386, 104 L. Ed. 2d 443 (1989), stated "Our Fourth Amendment jurisprudence has long recognized the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect." *Graham*, 490 U.S. at 396, 104 L. Ed. 2d at 455. Furthermore, the Court went on to state that not every push and shove would rise to level of a civil rights violation. *Id.* However, for the purposes of the defendant's motion, the Court must accept Mr. Glass's version of the arrest at Regency and view the evidence in the light most favorable to the plaintiff. *Newton*, 220 Va. at 951; *Reagan*, 215 Va. at 224, 207 S.E.2d at 890.

However, a large portion of the plaintiff's evidence dealt with the injured right shoulder, which was alleged to be the result of the arrest. However, the medical testimony presented at trial does not support that conclusion. The

evidence showed that Mr. Glass went to the Emergency Room after he was released from custody on September 26, 1996, complaining of discomfort in his right wrist and elbow. The Emergency Room doctor testified that there was no tenderness in the bicep and tricep region and that Mr. Glass had a full range of motion with his right arm. On October 3, 1996, Mr. Glass was treated by an orthopedic surgeon for problems with his right hand and bursitis in his right elbow. However, there was no complaint of pain in his right shoulder to either the emergency room physician or the orthopedic surgeon. The first indication of impairment to his shoulder was on June 23, 1997, when an X-ray revealed AC joint arthritis, degenerative arthritis, in his right shoulder. On July 10, 1997, an arthrogram was performed to determine if there was a rotator cuff injury, and that exam did not reveal any damage to Mr. Glass's rotator cuff. A tear in his right rotator cuff was not conclusively discovered until an operation of June 1, 1998, at which time the rotator cuff was repaired.

Mr. Glass is alleging that Officer Mann's conduct on September 26, 1996, is the proximate cause of an injury which was diagnosed more than twenty months after the injury allegedly occurred. Dr. Carr, who performed an independent medical exam on Mr. Glass, testified that the plaintiff had a degenerative rotator cuff disease which pre-existed the 1996 incident. He also testified that the incident may have aggravated the disease. However, the arthrogram performed in July of 1997, almost a year prior to the arrest at Regency and eleven months before surgery to repair the shoulder, showed no injury to Mr. Glass's rotator cuff. Therefore, the Court finds that there was insufficient evidence for a jury to determine by a preponderance of the evidence that Officer Mann's conduct was the cause of Mr. Glass's injury.

The Court, having found that the plaintiff has failed to establish a sufficient nexus between the conduct of Officer Mann and the torn rotator cuff, sets aside the judgment of the jury as to the assault and battery and the civil rights violation counts. Additionally, the plaintiff is barred by the doctrine of res judicata from presenting any evidence concerning the damage to his shoulder in any future proceedings. *Gottlieb v. Gottlieb*, 19 Va. App. 77, 81 (1994). Finally, if the plaintiff is unable to present evidence of other injuries sustained in the alleged altercation, he may still seek nominal damages if a finder of fact determines that a civil rights violation occurred but no injuries were sustained. *Gray v. Spillman*, 925 F.2d 90, 93 (4th Cir. 1991) (stating that injuries are not required to prove a § 1983 case, but where no injuries are established the award of nominal damages is the appropriate vindication of the Constitutional right). *See also Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 308, n. 11, 106 S. Ct. 2537, 2543, n. 11, 91 L. Ed. 2d 249 (1986).

It is obvious that the jury did not take into consideration all the evidence in coming to their conclusion. The chronology of medical treatment received by the plaintiff showed that as of July 10, 1997, there was no tear or leakage to the rotator cuff. Even though a physician may testify to the cause of an injury, that testimony is not conclusive proof of causation when there is uncontradicted medical evidence in direct opposition to the physician's testimony.

## Conclusion

The Court, having determined that the plaintiff failed to present sufficient evidence establishing that defendants Mayhew, Schmitt, and Wagner aided, abetted, or encouraged Officer Mann to assault and batter Mr. Glass, orders that the jury verdict in favor of the plaintiff against defendants Mayhew, Schmitt, and Wagner be set aside and judgment entered for those defendants only. The Court further orders that the verdicts against Officer Mann be set aside, and a new trial is hereby ordered. Finally, the plaintiff is precluded from introducing any evidence regarding the torn rotator cuff in any subsequent trials.